# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA DEE BAKER,<br><br>           Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>           Defendant. | Case No.  1:13-cv-01350-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

Plaintiff Brenda Dee Baker ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act.  (ECF No. 1.)   All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 7, 8.)

Plaintiff applied for Social Security benefits due to impairments related to degenerative disc disease, obesity, depressive disorder and anxiety disorder.  For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is granted and this action is remanded to the Commissioner for further administrative proceedings.

/ / /

/ / /

/ / /

1

1

**I.**

2

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

3          Plaintiff applied for Disability Insurance benefits and Supplemental Security Income

4  benefits on October 20, 2009.  (AR 140-154.)  Plaintiff's application was denied on April 13,

5  2010.  (AR 73.)  Plaintiff requested reconsideration of the denial on April 21, 2010.  (AR 79.)

6  Plaintiff's application was denied after reconsideration on September 20, 2010.  (AR 81.)  On

7  September 30, 2010, Plaintiff requested a hearing.  (AR 88.)

8          On September 12, 2011, a hearing took place before Administrative Law Judge Mary P.

9  Parnow ("the ALJ").  (AR 39.)  On November 11, 2011, the ALJ issued a written decision and

10  found that Plaintiff was not disabled.  (AR 16-32.)  The Appeals Council denied Plaintiff's

11  request for review on June 25, 2013.  (AR. 1.)

12          **A.      Plaintiff's Hearing Testimony**

13          Plaintiff was born on January 20, 1975.  (AR 43.)  Plaintiff is 5'6" and weighs 240

14  pounds.  (AR 43.)  Plaintiff is right handed.  (AR 43.)  In terms of education, Plaintiff completed

15  the "LVN Program" and has "a licensed psychiatric technician license" obtained in 1999  (AR

16  43-44.)  Plaintiff has a high school diploma.  (AR 44.)  Plaintiff contends that her disability

17  began in March 2008.  (AR 44-45.)

18          Plaintiff last worked in March 2008.  (AR 44.)  Plaintiff most recently worked as a house

19  manager for a group home of disabled clients.  (AR 45.)  Plaintiff passed out medication and

20  charted.  (AR 45.)  Plaintiff supervised other employees, hired and fired employees and did

21  performance evaluations.  (AR 46.)

22          Plaintiff also worked for the State of California at the Porterville Developmental Center

23  as a psychiatric technician.  (AR 46.)  Plaintiff worked for "forensic clients" that were high

24  functioning and very aggressive.  (AR 46.)  Plaintiff passed out medication, charted, watched the

25  clients, made beds, and fed clients.  (AR 46-47.)  Plaintiff did a lot of walking, bending, and

26  stopping altercations between clients.  (AR 46-47.)

27

28

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record).
Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript.  (See ECF No. 9.)

1    Plaintiff also worked at Kaweah Delta Mental Health Hospital.  (AR 47.)  Plaintiff passed

2  medication, watched clients, and changed beds.  (AR 48.)  Changing the beds sometimes

3  involved lifting or moving non-ambulatory patients.  (AR 48.)  Plaintiff also worked as a CNA at

4  Porterville Convalescent Hospital.  (AR 48.)  Plaintiff dressed, fed, and showered clients.  (AR

5  48.)  Plaintiff made beds, charted, and answered call lights.  (AR 48.)

6    Plaintiff currently lives with her fiancé.  Plaintiff has a driver's license but does not drive

7  because she cannot turn her neck or twist her back to look over her shoulder.  (AR 49.)

8    Plaintiff has been seeing Dr. Mendelson for pain treatment for a few years.  (AR 49-50.)

9  Plaintiff has received occipital nerve injections for migraines, and has done physical therapy,

10  acupuncture and massage therapy.  (AR 50.)  None of the therapies have helped.  (AR 50.)

11  Plaintiff was reluctant to receive epidural injections because she received occipital injections,

12  which did not work.  (AR 50.)  Plaintiff also had anxiety because she was told that there was a

13  chance of becoming paralyzed.  (AR 51.)

14    Plaintiff started taking Cymbalta for depression and anxiety the same month as the

15  hearing.  (AR 51.)  Plaintiff takes Trinaptin for her sleep disorder, but it does not help.  (AR 52.)

16  Plaintiff's pain medication helps a little, but she still has a lot of pain.  (AR 51.)  Plaintiff also

17  has side effects from her medications, such as drowsiness, upset stomach, and fatigue.  (AR 51.)

18  Plaintiff's doctors told her that these side effects could also be related to her depression and

19  anxiety.  (AR 52.)  Plaintiff sees a therapist for her depression.  (AR 53.)

20    On a typical day, Plaintiff's day starts at around 8:00 in the morning.  (AR 53.)

21  Plaintiff's fiancé helps her with showering and getting dressed.  (AR 53.)  Plaintiff usually stays

22  at home and has anxiety while her fiancé is out of the house.  (AR 53-54.)  Plaintiff typically sits

23  on the couch or paces around.  (AR 54.)  Plaintiff watches TV.  (AR 54.)  Plaintiff usually eats a

24  microwaved burrito or "something like that" for meals.  (AR 54.)

25    Plaintiff does not do any housework or go shopping because she cannot bend, stoop, pull

26  or push.  (AR 54.)  Plaintiff can lift five pounds at the most.  (AR 55.)  Plaintiff can walk fifteen

27  minutes before needing a break.  (AR 55.)  Plaintiff can stand for ten to fifteen minutes.  (AR 54-

28  55.)  Plaintiff can sit for about fifteen minutes.  (AR 56.)  Plaintiff can concentrate for a few

1    minutes at a time.  (AR 56-57.)  Plaintiff's carpal tunnel prevents her from grasping anything.

2    (AR 57.)  Plaintiff has constant panic attacks.  (AR 57.)  Plaintiff also has panic attacks outside

3    the house and feels like she is going to pass out because "everybody's staring at [her]."  (AR 58.)

4            **B.        VE Testimony**

5            Thomas Linvill testified as a vocational expert (hereinafter referred to as "the VE") at the

6    September 12, 2011 hearing before the ALJ.  (AR 60.)  The VE characterized Plaintiff's past

7    work as psychiatric technician (medium work, SVP 6) and resident supervisor (sedentary work,

8    SVP 6).

9            The ALJ provided the VE with the following first set of hypothetical limitations:

10   •   Same age, work history and education as Plaintiff;

11   •   No lifting over 15 pounds; and

12   •   No stooping, bending, kneeling, crawling, repetitive arm movements or overhead work;

13   (AR 61.)  The VE testified that a person with such hypothetical limitations could not perform

14   Plaintiff's past work as a psychiatric technician, but could perform work as a resident supervisor.

15   (AR 61-62.)

16           The ALJ provided the VE with the following second set of hypothetical limitations:

17   •   Same limitations from the first hypothetical;

18   •   Able to maintain attention and concentration to carry out simple job instructions;

19   •   Unable to carry out an extensive variety of technical and/or complex instructions; and

20   •   Able to related and interact with co-workers, supervisors and the general public.

21   (AR 62.)  The VE testified that a person with such hypothetical limitations could not perform

22   any of Plaintiff's past work.  (AR 62.)  However, such a person could perform other work as a

23   film touch-up inspector (sedentary, SVP 2), document preparer (sedentary, SVP 2), surveillance

24   system monitor (sedentary, SVP 2), or addresser (sedentary, SVP 2).  (AR 62-63.)  The VE

25   testified that these jobs existed in low numbers in the local economy, with the number of jobs

26   ranging from 4 or 5 to 30-35.  (AR 62-63.)  The jobs identified involved frequent handling and

27   frequent feeling, but not repetitive movements.  (AR 63.)

28   / / /

4

1    Plaintiff's attorney provided the VE with the following third set of hypothetical

2 limitations:

3    • Same age, education and work history as Plaintiff;

4    • "[S]ame non-exertionally psychiatric posed in the second hypothetical";

5    • No lifting over ten pounds;

6    • No repetitive twisting of the head and neck; and

7    • No repetitive overhead use of the left upper extremity.

8 (AR 64.)  The VE testified that a person with such hypothetical limitations could not perform

9 Plaintiff's past work, but could perform the jobs identified in response to the second

10 hypothetical.  (AR 64.)

11    Plaintiff's attorney provided the VE with the following fourth set of hypothetical

12 limitations:

13    • Able to lift and carry 5 pounds;

14    • Able to walk 15 minutes;

15    • Able to stand 15 minutes;

16    • Able to sit 15 minutes; and

17    • Unable to maintain concentration for longer than 10 minutes.

18 (AR 65.)  The VE testified that a person with such hypothetical limitations could not perform

19 any work.

20    **C.    Medical Records**

21    The administrative record includes the following medical records: records from Dr.

22 Diego Allende, D.O. (AR 303-348, 382-397, 437-464), records from the State of California

23 Division of Workers' Compensation (AR 349-353), records from Central Valley Family Health

24 (AR 354-365, 533-541), records from Dr. Craig R. MacClean, M.D. (AR 366-381, 606-626),

25 records from Dr. Ira Fishman, M.D. (AR 398-436), records from Mayumi Wint, LCSW (AR

26 465-469), records from Family Health Center (470-483), a February 19, 2010 Physical Residual

27 Functional Capacity Assessment from Dr. C. De la Rosa, M.D. (AR 484-488), a February 19,

28 2010 Case Analysis from Dr. C. De la Rosa, M.D. (AR 489-494), records from Adventist

5

1 Behavioral Health (AR 498-509, 598-603), a March 27, 2010 Psychiatric Evaluation from Dr.

2 Ekram Michiel, M.D. (AR 510-514), an April 12, 2010 Mental Residual Functional Capacity

3 Assessment from Dr. Randall J. Garland, Ph.D (AR 515-518), an April 12, 2010 Psychiatric

4 Review Technique from Dr. Randall J. Garland, Ph.D (AR 519-532), records from Selma

5 Community Hospital (AR 569-597), an August 10, 2010 Case Analysis from Dr. L. Bobba, M.D.

6 (AR 604-605), a September 13, 2010 Case Analysis from Dr. P. Walls, M.D. (AR 627), records

7 from Dr. Clifford Feldman, J.D., M.D. (AR 652-684), records from Cal Care Medical Institute

8 Inc. (AR 685-700), and other records from various medical sources (AR 701-802).

9     **D.**    **The ALJ's Findings**

10     The ALJ made the following findings of fact and conclusions of law:

11 • Plaintiff meets the insured status requirements of the Social Security Act through

12     December 31, 2012;

13 • Plaintiff has not engaged in substantial gainful activity since March 15, 2008;

14 • Plaintiff has the following severe impairments: degenerative disc disease of the lumbar

15     spine with radiculopathy to the right lower extremity, degenerative disc disease of the

16     cervical spine with radiculopathy, obesity, depressive disorder, and anxiety disorder;

17 • Plaintiff does not have an impairment or combination of impairments that meets or

18     medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

19     Subpart P, Appendix 1;

20 • Plaintiff has the residual functional capacity to perform less than the full range of light

21     work. Plaintiff should avoid lifting over 15 pounds and is precluded from lifting 25

22     pounds. Plaintiff is precluded from stooping, kneeling, crawling, repetitive arm

23     movements, and overhead work. Plaintiff is able to maintain attention and concentration

24     and to carry out simple job instructions. Plaintiff is able to relate and interact with

25     coworkers, supervisors, and the general public. Plaintiff is unable to carry out an

26     extensive variety of technical and/or complex instructions;

27 • Plaintiff is unable to perform any past relevant work;

28 / / /

1    • Considering Plaintiff's age, education, work experience, and residual functional capacity,

2      there are jobs that exist in significant numbers in the national economy that Plaintiff can

3      perform; and

4    • Plaintiff has not been under a disability, as defined in the Social Security Act, from

5      March 15, 2008.

6  (AR 21-31.)

7                                               **II.**

8           **LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY**
                                      **DETERMINATIONS**
9

10          An individual may obtain judicial review of any final decision of the Commissioner of

11  Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the

12  Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

13  disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

14  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).    "Substantial evidence" means more than a

15  scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

16  (internal quotations and citations omitted).  "Substantial evidence is 'such relevant evidence as a

17  reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Richardson v.

18  Perales, 402 U.S. 389, 401 (1971)).  "[A] reviewing court must consider the entire record as a

19  whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill,

20  698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

21  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the

22  Court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)

23  ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's

24  conclusion that must be upheld.")

25                                              **III.**

26                             **DISCUSSION AND ANALYSIS**

27          Plaintiff's arguments fall into two general categories.  First, Plaintiff contends that the

28  ALJ erred because the VE's testimony that Plaintiff could perform the jobs of "film touch-up

                                                  7

1  inspector," "document preparer," and "surveillance systems monitor" conflicted with the DOT

2  and the VE did not provide a reasonable explanation for the conflict.  Second, Plaintiff contends

3  that the other jobs identified by the VE do not constitute a significant number of jobs existing in

4  the national economy.

5          **A.**       **The ALJ Erred by Failing to Obtain an Explanation of the Apparent Conflict Between the VE's Testimony and the DOT**

6

7          Plaintiff argues that the ALJ erred in concluding that Plaintiff could perform work as a

8  "film touch-up inspector," "document preparer" and "surveillance systems monitor" because the

9  description of those jobs conflicted with the ALJ's findings regarding Plaintiff's RFC.

10  Specifically, Plaintiff contends that work as a "film touch-up inspector" requires occasional

11  stooping and constant reaching, handling and fingering, which Plaintiff cannot do.  Plaintiff also

12  contends that work as a "document preparer" and "surveillance systems monitor" require

13  "Reasoning Level 3," which is beyond Plaintiff's capabilities.

14          "In making disability determinations, the Social Security Administration relies primarily

15  on the *Dictionary of Occupational Titles* for 'information about the requirements of work in the

16  national economy.'"  Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting SSR 00-

17  4p at *2).  "The Social Security Administration also uses testimony from vocational experts to

18  obtain occupational evidence."  Id. (citing SSR 00-4p at *2).  "Although evidence provided by a

19  vocational expert 'generally should be consistent' with the *Dictionary of Occupational Titles*,

20  '[n]either the [*Dictionary of Occupational Titles* ] nor the [vocational expert] ... evidence

21  automatically "trumps" when there is a conflict.'"  Id. (quoting SSR 00-4p at *2).  "Thus, the

22  ALJ must first determine whether a conflict exists.  If it does, the ALJ must then determine

23  whether the vocational expert's explanation for the conflict is reasonable and whether a basis

24  exists for relying on the expert rather than the *Dictionary of Occupational Titles*."  Id.  "'[A]n

25  ALJ may rely on expert testimony which contradicts the [*Dictionary of Occupational Titles* ], but

26  only insofar as the record contains persuasive evidence to support the deviation.'"  Id. at 1153

27  (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).

28  / / /

1  |  1.  The ALJ Did Not Err in Determining that Plaintiff Could Work as a Film Touch-Up Inspector

2

3  Plaintiff argues that the ALJ erred because the "film touch-up inspector" job requires

occasional stooping and constant reaching, handling and fingering while the ALJ determined that

Plaintiff's residual functional capacity precluded Plaintiff from stooping or engaging in repetitive

arm movements.

The DOT describes the "film touch-up inspector" job as follows:

> **726.684-050  FILM  TOUCH-UP  INSPECTOR  (electron. comp.)**
> Inspects and repairs circuitry image on photoresist film (separate film or film laminated to fiberglass boards) used in manufacture of printed circuit boards (PCB's): Inspects film under magnifying glass for holes, breaks, and bridges (connections) in photoresist circuit image.  Removes excess photoresist, using knife.  Touches up holes and breaks in photoresist circuitry image, using photoresist ink pen.  Removes and stacks finished boards for transfer to next work station.  Maintains production reports.  May place lint free paper between dry film sheets to avoid scratching circuit images on film.
> *GOE: 06.03.02 STRENGTH: S GED: R2 M1 L1 SVP: 2 DLU 86*

2 Dictionary of Occupational Titles 733 (4th Ed. 1991)

The DOT's description of the "film touch-up" inspector job does not describe any duties

that require stooping.  Accordingly, contrary to Plaintiff's arguments otherwise, there is no

inconsistency between the VE's testimony and the DOT in that respect.

With respect to any inconsistency with Plaintiff's inability to engage in repetitive arm

movements, the ALJ elicited testimony from the VE providing a reasonable explanation

regarding any inconsistency.  At the hearing, the VE testified that the job may involve frequent

handling and frequent feeling, but it would not be repetitive.  (AR 63.)

Based upon the foregoing, the Court finds that the ALJ did not err in finding that Plaintiff

could perform work as a film touch-up inspector.

2.  The ALJ Erred in Determining That Plaintiff Could Work as a Document Preparer and Surveillance Systems Monitor

Plaintiff argues that the ALJ erred because the "document preparer" job and "surveillance

systems monitor jobs require "Reasoning Level 3."  Plaintiff contends that jobs which require

"Reasoning Level 3" are inconsistent with Plaintiff's limitations, including being able to only

1  "maintain attention and concentration and to carry out simple job instructions" and being "unable

2  to carry out an extensive variety of technical and/or complex instructions."

3      The Dictionary of Occupational Titles classifies jobs on a General Educational

4  Development ("GED") Scale which is composed of three divisions: Reasoning Development,

5  Mathematical Development, and Language Development.  2 Dictionary of Occupational Titles

6  1012 (4th Ed. 1991).

7          General Educational Development embraces those aspects of
              education (formal and informal) which are required of the worker
8          for satisfactory job performance.  This is education of a general
              nature which does not have a recognized, fairly specific
9          occupational objective.  Ordinarily, such education is obtained in
              elementary school, high school, or college.  However, it may be
10         obtained from experience and self-study.

11  Id. at 1009, 1012.

12      The GED Scale is numerical, ranging from 1 to 6.  The description for Reasoning Level 3

13  states:

14         03 Level Reasoning Development
              Apply commonsense understanding to carry out instructions
15         furnished in written, oral, or diagrammatic form.  Deal with
              problems involving several concrete variables in or from
16         standardized situations.

17  Id. at 1011.

18      However, the Social Security regulations do not utilize the GED Scale or any other

19  readily quantifiable scale or metric to measure a claimant's ability to reason.  Instead, the

20  regulations vaguely state that "nonexertional limitations" will be considered, such as "difficulty

21  maintaining attention or concentrating," and "difficulty understanding or remembering detailed

22  instructions."  See 20 C.F.R. § 416.969a(c).

23      Numerous courts have recognized the difficulty in comparing the DOT's GED Scale with

24  limitations expressed in an ALJ's residual functional capacity determination because the two are

25  not equivalent.  See Bement v. Astrue, No. C11-814-TSZ-JPD, 2011 WL 7039958, at *10-14

26  (W.D. Wash. Dec. 28, 2011) (limitation to "simple workplace decisions with few workplace

27  changes" consistent with Reasoning Levels 1 and 2, but not Level 3); Meissl v. Barnhart, 403 F.

28  Supp. 2d 981, 982-84 (C.D. Cal. 2005) (finding that limitation to simple, repetitive mental tasks

1    is consistent with Reasoning Level 2).

2         Defendant cites some cases where courts have held that simple, repetitive work

3    limitations are not inconsistent with jobs that are classified as Reasoning Level 3.  However, the

4    greater weight of authority within this circuit holds that a simple tasks limitation is inconsistent

5    with the DOT's Reasoning Level 3.  See, e.g., Wright v. Astrue, No. EDCV 10-400 SS, 2010

6    WL 4553441, at *4 (C.D. Cal. Nov. 3, 2010) (and cases cited therein); Torrez, 2010 WL

7    2555847, at *9 (and cases cited therein).  Following the greater weight of authority within this

8    circuit, the Court finds that a conflict existed between the VE's testimony and the DOT because

9    the DOT's description for the "document preparer" and "surveillance systems monitor" jobs

10   were not compatible with Plaintiff's limitation to only carry out simple job instructions.  While

11   this conflict does not necessarily preclude the ALJ from adopting the VE's opinion, the Court

12   finds that the ALJ erred in failing to elicit a reasonable explanation from the VE for the conflict

13   and determine whether the record supports a deviation from the DOT.

14        Based upon the foregoing, the Court finds that the ALJ erred in determining that Plaintiff

15   could perform work as a "document preparer" or as a "surveillance systems monitor."

16        **B.     The ALJ Erred In Finding that a Significant Number of Jobs Exist in the
             National Economy Which Plaintiff Could Perform**
17

18        Plaintiff argues that the ALJ erred because the VE's testimony does not support the

19   conclusion that the jobs identified by the VE existed in "significant numbers" in the national

20   economy.

21        "If the claimant is able to do other work, then the Commissioner must establish that there

22   are a significant number of jobs in the national economy that claimant can do."  Tackett, 180

23   F.3d at 1099.  "There are two ways for the Commissioner to meet the burden of showing that

24   there is other work in 'significant numbers' in the national economy that claimant can do: (1) by

25   the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at

26   20 C.F.R. pt. 404, subpt. P, app. 2."  Id.

27        The ALJ determined that Plaintiff could perform work as an addresser and Plaintiff does

28   not challenge this finding.  Moreover, as discussed above, the Court finds that the ALJ did not

11

1   err in concluding that Plaintiff could perform work as a "film touch-up inspector." See,

2   discussion, supra Part III.A.1. The VE testified that 35 addresser jobs exist in the Fresno area

3   and 13,200 addresser jobs exist on a national scale. (AR 62-63.) The VE testified that 4 or 5

4   film touch-up inspector jobs existed in the Fresno area and 1,300 film touch-up inspector jobs

5   existed on a national scale. (AR 62.) Accordingly, adding the two sets of job numbers up, there

6   were 39-40 jobs that Plaintiff could perform in the Fresno area and approximately 14,500 jobs

7   Plaintiff could perform on the national level.

8         Work exists in "significant numbers" if it exists in "significant numbers" either in the

9   region where the individual lives or in several regions throughout the country. 42 U.S.C. §

10  423(d)(2)(A); Gutierrez v. Commissioner of Social Sec., 740 F.3d 519, 528 (9th Cir. 2014).

11  Accordingly, the fact that there are only 35 addresser jobs in the Fresno area does not preclude a

12  finding that a "significant number" of jobs exist on the national scale. In fact, the ALJ is

13  prohibited from considering "whether such work exists in the immediate area in which [Plaintiff]

14  lives" in making her findings. 42 U.S.C. § 423(d)(2)(A) ("An individual shall be determined to

15  be under a disability [if he] cannot ... engage in any other kind of substantial gainful work which

16  exists in the national economy, regardless of whether such work exists in the immediate area in

17  which he lives....").

18        However, there is no bright-line rule for what constitutes a "significant number" of jobs.

19  Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012). In Beltran, 135 regional jobs and 1,680

20  national jobs was not a "significant number." Id. In Gutierrez, the Ninth Circuit stated that

21  whether "25,000 national jobs is sufficient presents a close call." Gutierrez, 740 F.3d at 529.

22  However, the court ultimately concluded that 25,000 jobs nationally "represents a significant

23  number of jobs in several regions of the country." Id.

24        In light of the Ninth Circuit's characterization of 25,000 jobs as a "close call," the Court

25  finds that 14,500 jobs on the national level is not a "significant number." Accordingly, the Court

26  finds that the ALJ erred in determining that there existed a "significant number" of jobs which

27  Plaintiff could perform.

28        **C.     Remand is Necessary for Further Administrative Proceedings**

1  Remand for further administrative proceedings is appropriate if enhancement of the

2  record would be useful. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely,

3  where the record has been developed fully and further administrative proceedings would serve

4  no useful purpose, the district court should remand for an immediate award of benefits." Id.

5  "More specifically, the district court should credit evidence that was rejected during the

6  administrative process and remand for an immediate award of benefits if (1) the ALJ failed to

7  provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues

8  that must be resolved before a determination of disability can be made; and (3) it is clear from

9  the record that the ALJ would be required to find the claimant disabled were such evidence

10  credited." Id. (citing Harman, 211 F.3d at 1178). "The decision to remand to the SSA for

11  further proceedings instead of for an immediate award of benefits is reviewed for abuse of

12  discretion." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) (citing Harman v. Apfel,

13  211 F.3d 1172, 1174, 1178 (9th Cir. 2000)).

14  In this case, there are outstanding issues that must be resolved before a determination of

15  disability can be made. For example, the record must be further developed to resolve the conflict

16  between the VE's testimony and the DOT regarding whether Plaintiff could perform work as a

17  "document preparer" or "surveillance systems monitor." Moreover, the record may be further

18  developed to determine whether Plaintiff could perform other jobs. Accordingly, it is not clear

19  from the record that the ALJ would be required to find Plaintiff to be disabled. The Court will

20  remand for further administrative proceedings.

21  **IV.**

22  **CONCLUSION AND ORDER**

23  Based upon the foregoing, the Court finds that the ALJ erred by failing to resolve an

24  apparent conflict between the VE's testimony and the DOT regarding Plaintiff's ability to

25  perform work as a "document preparer" and as a "surveillance systems monitor." The Court

26  further finds that the ALJ erred in determining that a "significant number" of jobs existed in the

27  national economy which Plaintiff could perform. The Court finds that further administrative

28  proceedings are necessary to resolve outstanding issues before a determination of disability can

1  be made.

2      Accordingly, it is HEREBY ORDERED that:

3      1.  Plaintiff's appeal from the administrative decision of the Commissioner is
4          GRANTED;

5      2.  This action is REMANDED to the Commissioner for further administrative
6          proceedings;

7      3.  JUDGMENT is entered in favor of Plaintiff Brenda Dee Baker and against
8          Defendant Commissioner of Social Security; and

9      4.  The Clerk of the Court is directed to CLOSE this action.

10

11  IT IS SO ORDERED.

12  Dated:   **July 18, 2014**

UNITED STATES MAGISTRATE JUDGE

14